LOUIS ALBRECHT, Appellant, v. RICHARD ALBRECHT AND ERNEST ALBRECHT, Appellees, AND MINNIE FREDERICKSON, Appellant.

Deeds: DELIVERY TO STRANGER: CONTROL BY GRANTOR. To pass a
1  present title by a deed deposited with a stranger to be delivered upon the death of the grantor, the deposit must be without reserved power or right to control the same, but the physical power of the grantor to recall or his mental power to alter the same will not necessarily defeat the conveyance. The intent of the grantor is the controlling question. Evidence considered and held to show an intention to pass a present estate.

Deeds: CONSENT TO SUBSTITUTION. Where the grantee in an absolute deed consents to its destruction and the substitution of a
2  trust deed in its stead, she cannot insist that title passed under the first deed, although it had been delivered to a third person for her benefit.

Acceptance of Deed; WAIVER. The acceptance of a trust deed to
3  property is a satisfaction of an agreement to convey absolutely, and a waiver thereof.

Acceptance: EVIDENCE. Evidence that a beneficiary has knowl-
4  edge of and assents to the execution of a trust deed and that the trustees accept the same, is sufficient to show acceptance.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

SATURDAY, OCTOBER 24, 1903.

SUIT in equity for the cancellation of a trust deed and for the partition of real estate. Defendant Minnie Fred-

erickson, the beneficiary under the trust deed, filed a cross-petition, in which she claimed absolute title to the land, and asked that it be quieted in her. The trial court dismissed both the petition and the cross-petition, and plaintiff and defendant Frederickson appeal.—*Affirmed.*

*Clark & McLaughlin* and *Carr, Hewitt, Parker & Wright* for appellant Louis Albrecht.

*Mulvaney Bros.* and *Read & Read* for appellant Minnie Frederickson.

*Dale & Harvison* for appellees.

DEEMER, J.—February 10, 1893, John Albrecht, father of the parties to this litigation, who was then about seventy-five years of age, and in poor health, executed two deeds, one for twenty acres of land to Richard Albrecht, and the other for one hundred and twenty acres to the cross-petitioner Minnie Frederickson. At the same time he made assignment of certain notes and mortgages to Richard and Ernest Albrecht. This assignment read as follows: "After my decease the above notes are to be turned over to Richard and Ernest Albrecht, to whom they will then belong." These papers were all turned over to one Havens, a justice of the peace, with the statement that he (Havens) should keep them until the grantor or assignor was dead, and then deliver them over to the grantees and assignees. A few days after the execution of these papers John Albrecht became dissatisfied with the deed he had made to Minnie Frederickson, for the reason that thereunder Minnie's husband might some time inherit a part of the property, and Minnie's children might not obtain the full benefit thereof. He thereupon, on the 15th day of February, 1893, requested Havens to make out a trust deed for the one hundred and twenty acres of land, which should convey the property to appellees

Richard and Ernest, in trust for the use and benefit of Minnie and her children. This was accordingly done, and the original deed to Minnie was returned to the grantor, who thereupon destroyed it, and delivered the trust deed to Havens, to be held by him until the death of John, and then delivered to the trustees. The father died in the year 1897, and after his death the instruments to which we have referred were delivered to the grantees and assignees named therein. Prior to his death John Albrecht had retained the notes and mortgages, collected the interest due thereon, received the principal of some of them, and reloaned it to others, and in all ways managed the same as if they were his own. He also continued to use and occupy the real estate covered by his deeds, paid taxes thereon, and managed the same as he had done before the execution of the deeds.

The validity of the assignment of the notes and mortgages is not involved in this suit. The action is to set aside the trust deed, and to have plaintiff decreed to be the equitable owner of one-fourth of the property covered thereby.

. The cross-petitioner seeks to have the absolute deed of February 10, 1893, to Minnie Frederickson, established, and her title thereunder confirmed; and she also asks, in the event this relief is not granted her, to have a decree for the specific performance of an alleged contract, whereby deceased agreed to give her the real estate and other property, in consideration of her agreement to remain at home and care for her parents during their old age. Averring performance on her part of this agreement, she asks that the title to the real estate be confirmed in her.

Plaintiff's case is bottomed on two propositions: First, that neither the absolute nor the trust deed to Minnie Frederickson was ever delivered; and, second, that, if delivered, they were each testamentary in character, and were not intended to pass a present estate; that,

being testamentary in character, they were not executed with proper formalities to pass the estate by will; and that he is entitled to have them both canceled, and to have a decree establishing his interest in the property as one of the heirs of John Albrecht.

We shall first consider these propositions before going to the claims made by the cross-petitioner. The legal phases of the controversy have been so recently considered that we need do no more than refer to the latest case for a full exposition therof. It is *White v. Watts*, 118 Iowa, 549. Indeed, this case is much like that one in many of its aspects, and but little need be added to what is there declared. The question, after all, is largely one of fact. It is this: What was the intent of the grantor when he delivered the deeds to Havens? Did he deliver the deeds without reserving the right of control, intending to pass a present estate? Havens' intent or undertsanding of the matter is not decisive of this issue, and the real question is, what was John Albrecht's intent? The parties do not materially disagree as to the law of the case, and there is little room for a discussion of this matter. They do not place the same construction on the language used in some of our decisions, but they do not seriously differ as to the point actually decided.

This matter has been explained in the *White Case* in the following language: "To be effective, such deposit [with a stranger] must be made without any reserved right or power in the grantor to control the deed or to prevent its delivery on his death. * * * This may be conceded to be the law, though the fact that it may be within the manual or physical power of the grantor to regain the possession of the deed, or that it may be within his mental power to alter his intention, will not necessarily defeat the conveyance." The whole matter, as we view it, is one of intent on the part of the grantor. The manner of reserving control over

1. DEED: delivery to stranger: control by grantor.

the deed is material in arriving at this intent; for where a deed is delivered with an express reservation of the right of recall under certain conditions there is an evident purpose on the part of the grantor not to make it presently effective as a conveyance. But the mere physical power of recall, or the presence of mental power. to alter his intention, sheds no light on the question of intent when the deed is delivered. Neither does the understanding of the depositary, nor the construction he places upon the language used when the instrument is delivered to him, afford any evidence on the question of intent. The deed must be delivered, it is true, without any reservation of control; for such reservation clearly negatives an intent on the part of the grantor to pass a present estate, and if subject to reservation no estate passes. But mere physical or mental power of change is not regarded as of any probative force in solving the question of delivery. Plaintiff relies largely on the fact that John Albrecht did control one of the instruments after delivery, on the fact that he treated the property as his own after the conveyances and assignments were made, and on the language of the assignment which we have quoted, as evidencing his intention not to deliver absolutely.

But for the fact that the absolute deed was converted into one of trust, and the absolute deed destroyed with the assent of Minnie Frederickson, who was called in when the trust deed was executed, there would be much force in the first proposition. But as her consent was obtained, and for some reason thought to be necessary, the probative value of the circumstance relied upon is materially lessened, if not entirely destroyed. The occupancy of the premises by the grantor after the execution of the deeds is of no importance. In all such cases the reservation of a life estate is implied in the grantor, and under this reservation he has the right to the possession, control, and management of the property; hence there is

nothing in this circumstance.    The terms of the written
assignment of the note and mortgage tend to support.
plaintiff's position, but this should not be allowed to de-
feat the deeds.    The assignor and grantor may have in-
tended to dispose of his real estate absolutely, and to defer
the disposition of his notes until his death.    This he could
do in the manner shown in this case, and, while there is
some value in this evidence as tending to confirm plain-
tiff's contention, it is by no means controlling.    There is
no doubt, under the evidence, that he intended the other
deed to his son, Richard, which was executed at the same
time as the original deed to Mrs. Frederickson, to pass a
present estate, for he had received the consideration for
the land conveyed to Richard, and was under a present
duty to convey him the land.    This being true, each con-
veyance or transfer must to a certain extent at least stand
on its own bottom.    Moreover, the trust deed was not
executed at the time of the assignments of the choses in
action, but some five days afterward, and there is not a
syllable of evidence tending to show any reservation of
control as to this deed.

The value of the assignment of the notes as evidence
is neutralized by the execution of the other deed at the
same time, and by the further fact that the trust deed was
delivered without any reservation whatever.    The custo-
dian of these deeds testified that the instruments were
delivered to him, to be delivered to the grantees upon the
death of the grantor, and that there was no reservation of
any kind at the time of the delivery, or afterwards, by
the grantor.    Moreover, it is shown that after the grantor
had executed the trust deed he so expressed himself as to
indicate that he had lost all control over the deed.    His
declarations after the delivery of the trust deed all indi-
cate that he understood he had parted with the title to
the land, although enjoyment thereof during life he had
reserved to himself.

This right of enjoyment, as we have seen, has no bearing upon the question of the defendants' title.    The cross-petitioner contends that the first, the absolute deed, should

**2. DEEDS: consent to substitution.** be confirmed and established, although destroyed by the grantor after the delivery to Havens.    Her contention would no doubt be sound, were it not for the fact that she consented to the destruction of the deed and to the substitution therefor of the trust deed, under which defendants now claim.    There is no doubt of the right in law of a grantor and grantee in a deed which has not been recorded to mutually consent to its destruction, and to the substitution of another in its stead.    While the cases seem to hold that when title has once passed by deed it cannot be affected by destruction of the instrument of conveyance, we think the principle we have announced well settled  both  by reason and authority.    *Farrar v. Farrar*, 4 N. H. 191 (17 Am. Dec. 410); *Dukes v. Spangler*, 35 Ohio St. 119; *Parker v. Kane*, 4 Wis. 1 (65 Am. Dec. 283).

II.    The cross-petitioner's claim for specific performance of the alleged agreement made by John Albrecht to convey the land to her absolutely, must fail because of

**3. ACCEPTANCE of deed: waiver.** lack of evidence to sustain it.    The testimony offered to support it was largely incompetent, coming from Minnie Frederickson herself, and from her husband, who were both incompetent to testify.    Moreover, if there had been sufficient evidence to sustain such an agreement, her consent to accept the trust conveyance would  amount  to  a  satisfaction of that agreement, and a complete waiver of its provisions.    There are other reasons for defeating this claim which need not be elaborated, for what  we  have already said disposes of this contention.

We do not overlook the claim that this assent on the part of Minnie Frederickson to the substitution of the trust deed is denied in argument.    The record satisfies us,

however, that such assent was in fact given. This, in itself, disposes of all the contentions made by the cross-petitioner.

On the question of acceptance of the trust deed by the grantees, we have evidence not only that Mrs. Frederickson, one of the beneficiaries, knew of, assented to, and **4. Acceptance:** virtually accepted the deed at the time it was **evidence.** executed; but also testimony that it was made for the benefit of the children of the grantor, and is in fact beneficial in character; and the further fact that the trustees accepted the conveyance from Havens after the death of the grantor. Under the doctrine of the *White Case, supra*, this was a sufficient acceptance.

The trial court was right in sustaining the trust deed, and its decree is AFFIRMED.