ELIZABETH ORRIS et al., Appellees, v. RUSSELL E. WHIPPLE, Executor, Appellant.

No. 44183.

JUNE 21, 1938.

REHEARING DENIED SEPTEMBER 23, 1938.

Maher & Mullen, for appellees.

Breen & Breen, for appellant.

ANDERSON, J.—■■■ This case was commenced and tried as a replevin action in which a jury was waived and the case tried to the court resulting in a finding that the plaintiffs were entitled to the possession of a certain deed to real estate in the town of Lehigh, Webster County, Iowa. Serious objection was made to the form of the action, but in our view of the case it will not be necessary for us to consider or pass upon this question. We might say however, in passing, that the appellant claims error on the part of the trial court in not sustaining a motion to dismiss on the ground that replevin was not the proper remedy, appellant contending that where the thing sought is an adjudication of title to real estate and not the actual possession of a conveyance thereof that replevin cannot be maintained; and appellant cites quite respectable and extensive authority for his position.

■■■ The real question involved in the trial below and on this appeal is whether or not a certain deed executed by one Clara Aken, deceased, purporting to convey to plaintiffs-appellees certain real estate was delivered and did in fact constitute a valid conveyance and vest title in the appellees.

The story detailing the pertinent and material facts and circumstances is briefly as follows: Clara Aken lived substantially all her lifetime in Lehigh, a small town in Webster County, Iowa. She was never married and at her death in March 1936, was approximately seventy-five years of age. Earlier in her life she went into the millinery business in Lehigh operating such business in a store room of a building that she owned, and she occupied the second story of the building as a residence. She had no near relatives. Her nearest kinsfolk being nieces and nephews. The record discloses that she left little or no property other than the building occupied by her which is of the approximate value of $600 or $700. In 1932 she executed a will which was prepared for her by Mr. Russell

E. Whipple, a long time resident of the town, and this will was admitted to probate and the estate is in process of administration with the said Whipple, defendant and appellant in this action, as executor of the estate. The will provided and directed that the executor sell the real estate located in Lehigh, Iowa. The building we have above mentioned and the real estate upon which it is situated is the only real estate owned by Clara Aken at any time, as far as is shown by this record, and it is the title to this real estate which is involved in this action. The will contains further provisions directing the payment of debts, expenses of last sickness and burial, and special bequests of $200 each to three nieces, four nephews, a bequest of $300 to another niece, and special bequests of $200 each to one C. E. Bailey, to a Spiritualistic Association and to Flora Pettibone, whom she describes as her "Dear Friend"; and the last bequest mentioned in the will is $200 to Elizabeth Orris. Elizabeth Orris is one of the plaintiffs and appellees in this action. It will be noted that Fred Orris, the twin brother of Elizabeth, and one of the appellees herein, is not mentioned in the said will. There is testimony of the mother of the Orris twins to the effect that Clara Aken began talking about leaving the building to the twins in 1934, but most of the talk, according to her testimony, was in 1935. And she further testifies that Clara made the statement several times during 1935 that she had the papers all made out so that the children (twins) would get the building. A clerk in a store frequently visited by Miss Aken also testified that at different times he heard Miss Aken state when she was in the store that she had it fixed so Junior and his sister would get the building. Another witness, a Mrs. Elsberry, who ran a restaurant in the little town where Miss Aken took her meals during the year prior to her death, testified that she heard Miss Aken say, "If anything happens to me, I want Junior to have the building." This witness also testified that she never heard any other name mentioned except Junior and that all she talked about was leaving this property to Junior. Junior seems to have been a nickname for the appellee Fred Orris. These conversations were after the execution of the deed here involved. One Peter Garatoni, who was in charge of a branch bank in Lehigh from and after September 1934, testified that in March 1935, Miss Aken was a customer of the bank and had a safety deposit box therein; that she talked to Garatoni

about disposing of her property and told him that she wanted Junior Orris to have her building when she died and that she wanted a deed made out conveying the property in question to him; that she would come back to the bank some day when she had more time and make out the deed. About April 1, 1935, she did go back to the bank and had Garatoni make out a deed to the property in question to Junior (Fred) Orris, alone. She then changed her mind and destroyed this first deed and made a second deed to Junior and his twin sister, Elizabeth. And this second deed is the one that is involved in this action. Garatoni further testified that the deed was signed at that time by Miss Aken and he told her that it was the first instrument of that kind he had prepared and that he would like to have it O. K.'d by his superior officer at the Burnside Savings Bank. The deed was left in the possession of Garatoni for this purpose and a week or two later Miss Aken returned to the bank and was advised that the deed was O. K. and at the suggestion of Garatoni the deed was placed in the lock box of Miss Aken in the bank where it remained, as far as the record shows, until after Miss Aken's death, which occurred March 27, 1936. The record that was made as to the deposit of the deed in the safety box was largely made by the trial court's interrogation of this witness. The witness testified:

"She didn't give me any instructions but I thought it would be better to have it in the box and I knew that we could get hold of it whenever we wanted it. I did not have access of my own to this box. I used her key and the master key to open the box and the deed was placed therein and the box locked and her key returned to her. This was about April 1st, 1935, and as far as I know the deed remained in the box thereafter until her death. She said nothing to me as to what disposition I was to make or what disposition was to be made of the deed itself. We did not discuss it. After the deed was placed in the box I never had any conversation at any later period with her in which she mentioned any disposition to be made of the property."

The witness further testified that Miss Aken and the witness together went back to the safety deposit vault and Miss Aken handed the witness her key and with this and the master key the box was unlocked, the deed placed therein, the box locked

and Miss Aken's key returned to her. About the first of the year, 1936, Miss Aken slipped and fell and broke her hip. She was removed to a hospital in Fort Dodge, Iowa, where she died on March 27, 1936. Soon after her injury she sent for Mr. Whipple's assistant in the post office at Lehigh, a Miss Bethel, gave her the key to the lockbox and asked her to obtain therefrom certificates of savings deposits and withdraw $100 in postal savings from the post office. Miss Bethel performed this service and left the key to the safety box with Mr. Whipple, the postmaster, where it remained until after the death of Miss Aken. The will was admitted to probate and Mr. Whipple was appointed and qualified as executor. He obtained the deed in question from the safety box and has since retained it. This action was brought in replevin, as we have heretofore stated, to obtain from Whipple, as executor, the possession of said deed.

The foregoing is all of the material and pertinent evidence produced upon the trial. Upon this record and from this evidence the trial court made a finding, a part of which is as follows:

"Except for persistent expressions of opinions and conclusions on the part of the witness Garatoni, to which appropriate objections were interposed, and except that he manually carried the deed from the consultation room to the safety deposit box where it was laid away, he was unable to quote any statement by the grantor, or cite any act on her part, evidencing any purpose to make a present delivery of the deed, either to the witness or to anyone else. Standing alone it must be said that the testimony of the banker indicated that everything that took place was not only consistent with, but really evidenced a purpose at that time of, withholding the deed; and the banker testified that it quite lay in her power, at any time, to withdraw the deed from the box, and if she so desired, to destroy it entirely."

But the court further found and recited in its findings that "a long series of witnesses appeared at the trial, who with one accord testified that between that time and the time of her death she repeatedly spoke of this deed; said that she intended these plaintiffs to have the building; that she wanted them to have it; that she had deeded it to them; that she had made out the necessary papers to give them the building; that they would

have it after her death; etc., etc." We are unable to find support in the record for this last quoted statement of the court. None of the witnesses, and there was not a long line of them, testified that Miss Aken ever spoke of the deed in question or that she had deeded the property to the twins, and the "long line of witnesses" referred to by the court consisted only of Peter Garatoni who testified, as we have mentioned heretofore, that Miss Aken did not discuss the disposition of the deed or the property here at the time it was deposited in her safety box or any time thereafter, and that she gave him no directions or instructions as to a disposition or a delivery of the deed. It might be mentioned that this man Garatoni had only lived in Lehigh six months or less at the time of the making of the deed in question and could not have known Miss Aken a longer period than that.

And also Mrs. Ethel Elsberry who testified that at various times in her restaurant Miss Aken said "she had her papers made out, that she wanted Junior to have the building if anything ever happens to me. She did not mention his twin sister."

Also the testimony of Frank Valashek, who was a clerk in a store where Junior or Fred Orris also worked and who testified that he had heard Miss Aken say at different times when she came in the store "that she had it fixed so Junior and his sister would get her building. I heard her make this statement at least two dozen times during the summer of 1935. She would be talking to the clerks in the store."

And in addition to the foregoing of course we have the testimony of the plaintiff Fred Orris and his mother as to similar and repeated statements.

In answer to a question by the court the mother of the plaintiffs stated:

"After 1935. Well a number of times, Judge, she said— she came to the house and said, 'I have everything all fixed. I have my will made out and I have the papers made out. I am leaving the building to the twins.' "

Upon the foregoing testimony the trial court found that while there had been no "formal ceremony" of delivery of the deed, that Miss Aken intended to make delivery and understood and believed that such delivery had been effected. And the trial court bases such conclusion upon prior decisions of this

court as follows: Newton v. Bealer, 41 Iowa 334; Criswell v. Criswell, 138 Iowa 607, 116 N. W. 713; McKemey v. Ketchum, 188 Iowa 1081, 175 N. W. 325; Leighton v. Leighton, 196 Iowa 1191, 194 N. W. 276; Davis v. John E. Brown College, 208 Iowa 480, 222 N. W. 858; Equitable Life Ins. v. Brown, 220 Iowa 585, 262 N. W. 124; and it is upon these cases that the appellees rely for an affirmance in this court.

It will appear to anyone who investigates and studies the Iowa cases in which the rules governing the execution and delivery of conveyances of the kind here involved are stated, that there exists very much confusion and conflict, and that the cases relied upon by appellees to which detailed reference will hereafter be made are a departure from long established rules and the great weight of authority. We conclude that much of this confusion, inconsistency, and conflict has occurred by reason of construing careless statements and dictum as definite statements of the law.

The first case to which reference is made by the appellee is the Newton v. Bealer case, 41 Iowa 334. The opinion in which was filed in 1875. As we read this opinion it furnishes no support for cases which follow it, basing their holdings on the opinion. The facts as reported in the opinion disclose that Bealer, the grantor, had distributed his entire estate as far as practical among his children of a first marriage, and conveyed the balance of his realty to his son, Abraham, by his second marriage. The deed to Abraham was the subject of the controversy in the action mentioned. It was a fee simple deed reserving however to the grantor the use and occupancy during his life. The deed was deposited in a chest of some kind and shortly before his death the grantor pointed to the chest and said, "After I am gone the deed and will will be found in that chest." The deed was later found and recorded. This court held that under the circumstances where, by other conveyances and the terms of a will, all of the other heirs of the grantor had been taken care of in the distribution of his property, that equity would imply a delivery of the deed in question to the son Abraham for the purpose of carrying out the evident intent of the grantor and to effectuate the ends of justice in the distribution of the grantor's estate. The record in that case shows that the grantor had repeatedly stated that he had made all the provisions for his other children that he intended to make, and

that the conveyance with the restrictive clause in it was made for the purpose of an equitable distribution of his estate among his heirs. Basing a decision principally upon the Bealer case this court in the Brown College case, 208 Iowa 480, 222 N. W. 858, went one step further and held that while a grantor may deposit an executed deed with a trustee for delivery to the grantee upon the grantor's death, he may reserve the right to recall the deed and if he does not exercise such right the final passing of the deed by the trustee to the grantee after the death of the grantor consummates a valid delivery. In the Brown College case the deeds involved were deposited with the Capital City State Bank of Des Moines with a written direction that in case of the grantor's decease only, the deeds should be delivered to the grantees therein named; and in a second direction in writing the grantor, Mrs. Davis, directed that the deeds were to be held by the bank for the grantees named and to be delivered in case of the decease of Mrs. Davis, the deeds to be returned to her on demand. She died without exercising the right to recall. And this court in determining the validity of the deeds and the question of their delivery held that because there was no recall that the delivery effectually passed title. This court saying in its opinion however (at page 483 of 208 Iowa, page 860 of 222 N. W.) :

"It is undoubtedly true that the weight of authority in this country sustains the general rule that, where the power to recall a deed deposited with a third party is reserved to the grantor, there is no effectual delivery, and the deed cannot take effect. * * * This is obviously true where the right to recall is exercised by the grantor. In 18 Corpus Juris 210, it is also stated:

' * * * in a few cases, a power upon the part of the grantor to recall the deed has been held not to invalidate the delivery, where such power was not exercised during the lifetime of the grantor.' This statement of the text is supported by citations to three cases: Henry v. Phillips, 105 Tex. 459, 151 S. W., 533, and two cases from this court,—Newton v. Bealer, 41 Iowa 334, and Lippold v. Lippold, 112 Iowa 134, 83 N. W. 809, 84 Am. St. Rep. 331. It is upon this exception that appellant relies."

And upon authority of this text and the three cases cited

this court determined that the delivery of the deeds to the bank in the Brown College case constituted good delivery and passed title. And its companion case, Boone Biblical College v. Forrest, 223 Iowa 1260, 275 N. W. 132, followed the Brown College case and reached the same conclusion, although both cases contained the statement that the rule announced may be contrary to the weight of authority but that it is consistent with prior Iowa cases. In the Brown College case we cite and quote from Trask v. Trask, 90 Iowa 318, 321, 57 N. W. 841, 48 Am. St. Rep. 446, as follows:

"It is well settled, and may be said to be an established rule, that a deed may be delivered to a third person for the grantee, and, if subsequently assented to by the grantee, it will be as good a delivery as if made directly to the grantee. But a delivery of a deed to a stranger, to be delivered to the grantee at the direction of the grantor, or with a reservation of the right in the grantor to countermand it, does not pass the title. A delivery to a third person does not authorize a presumption that it is done with the intention of passing the title."

In the case of Albrecht v. Albrecht, 121 Iowa 521, 524, 96 N. W. 1087, cited and quoted from in the Brown College case, we said:

"The whole matter, as we view it, is one of intent on the part of the grantor. The manner of reserving control over the deed is material in arriving at this intent; for where a deed is delivered with an express reservation of the right of recall under certain conditions there is an evident purpose on the part of the grantor not to make it presently effective as a conveyance. But the mere physical power of recall, or the presence of mental power to alter his intention, sheds no light on the question of intent when the deed is delivered. * * * The deed must be delivered, it is true, without any reservation of control; for such reservation clearly negatives an intent on the part of the grantor to pass a present estate, and if subject to reservation no estate passes. But mere physical or mental power of change is not regarded as of any probative force in solving the question of delivery."

In all of the cases so far reviewed there was some form of delivery. In the case at bar there is no semblance of a delivery

either to the grantees or to a third person. And if the lower court is sustained in the instant case, then the age old and consistently followed rule as to delivery of a deed to take effect after the grantor's death is entirely wiped out.

A peculiar situation is disclosed by a reading of innumerable of our cases involving this question and that is, in many of them the original case of Newton v. Bealer, supra, is not even mentioned. This is glaringly evident in the case of Lathrop v. Knoop, 202 Iowa 621, 210 N. W. 764, in which opinion Justice Albert reviewed many of the prior cases of this court. In the Lathrop case, Mrs. Lathrop executed a deed in which the names of grantees were inserted in lead pencil. And the grantor attached to the said deed a written direction to her executor to fill in the blank spaces and pencilings with pen and ink after her death. She then placed the deed in her own safety deposit box. She later, however, delivered the keys to her box to one Hallowell who retained the possession thereof until her death. Hallowell, as her agent, collected the rents for the premises described in the deed and sent them to Mrs. Lathrop as long as she lived. After her death Hallowell removed the deed from the box with the written directions thereto attached and delivered the same to the administrator of Mrs. Lathrop's estate. In determining the issues as to the delivery of the deed, Judge Albert used the following language (at page 623 of 202 Iowa, page 766 of 210 N. W.) :

"The authorities are also harmonious that delivery may be made by the grantor to a third person, and become as effective to pass title as though made directly to the grantee. To effectuate a transfer of title, there must be delivery, actual or symbolical. In whatever form delivery is accomplished, there must be the intention of the grantor to transfer title, without any reservation of control thereover. Albrecht v. Albrecht, 121 Iowa 521, 96 N. W. 1087; Dolph v. Wortman, 185 Iowa 630, 168 N. W. 252; Abegg v. Hirst, 144 Iowa 196, 122 N. W. 838, 138 Am. St. Rep. 285. * * * The record is clear in this case that Mrs. Lathrop desired to make a gift of the property described in the deed to interveners, but that she desired to retain control of the property and receive the income therefrom during her lifetime. * * * Had she delivered the deed to the grantees or to a third person, intending to pass title, the conveyance would have been irre-

vocable, and her intention, if occasion arose, to change the name of the grantees would have been defeated. The testimony is equally conclusive that she desired, if interveners survived her, that they should become the owners of the property. The grantor retained possession of the deed, and kept it always under her control. The delivery of the keys to the safety box to Hallowell, upon the occasion of her trip to Rochester, and later to California, where she died, was not for the purpose of parting irrevocably with the possession or control of the deed, but for convenience in assuring its final delivery to her executor. * * * There was never a moment of time, after the deed was executed, when it was not under the full control of the grantor, nor when any other person could have made delivery thereof to grantees for her. Had she left the deed with Hallowell or some other person to be handed to interveners after her death, intending thereby to transfer a present title to them, subject to the retention of possession and control during her life, the delivery would, under the rule in this state, have been sufficient. * * * This she did not do. There was neither manual nor symbolical delivery of the deed. Mere intention to transfer title, without any act or form of delivery, is not sufficient to accomplish that purpose. The note written and signed by the grantor and pinned to the deed was merely a direction to her executors, and is of no controlling probative value. * * * The result is unfortunate, because it defeats the wishes of the deceased, and vests title to the property in those whom she manifestly did not desire to have it. The deed never having been delivered during the lifetime of the grantor, no title passed to interveners.''

Following the Brown College case we reach Robertson v. Renshaw, 220 Iowa 572, 261 N. W. 645, in which this court based its decision principally upon the opinion in the Brown College case, but still further extended the rule, or perhaps more accurately speaking. still further modified and almost obliterated the former long standing and well established rule as to the delivery of conveyances in cases of this kind. and the question now presented in the instant case is whether we want to still further and more completely emasculate the rule and entirely depart from any semblance of harmony with the great weight of authority opposed to our recent holdings.

It may be that we should consider for a moment the classes

of cases under which this question of delivery arises. First, there is the usual and ordinary manual delivery cases. Second, there are the cases of delivery in escrow with instructions to deliver to the grantee upon the happening of some specified condition. Third, there are the cases of symbolic delivery such as placing the deed in a chest or other receptacle and surrendering the key to the grantee or to another with instructions regarding actual delivery. Fourth, there are the cases of delivery by placing the deed in escrow with instructions to deliver unless recalled, where the power to recall is never exercised; and fifth, the line of cases where the grantor has placed the deed in his safety deposit box, retains the key thereto and continues to exercise full dominion over the property, and dies. Now, under these various classes we may list and analyze the Iowa cases on this subject cited in the briefs in the instant case, as well as those which we have referred to and come to our notice from our personal investigation.

In Arndt v. Lapel. 214 Iowa 594, 243 N. W. 605, we have a case of simple, actual, manual delivery. As is too often the case, the opinion covers a general discussion of delivery citing authorities and quoting liberally therefrom, but the court finally held that the deed was delivered to the grantee, not placed of record until after the grantor's death, but that it constituted a good delivery.

In the John E. Brown College case, we have a deed that falls within the fourth class, above enumerated, in which the deed was deposited in escrow with instructions to deliver to the grantee if grantor did not recall the instrument, and this court held that not having exercised the right of recall, that there was a valid delivery to the grantee. It was said in the Brown College case that the holding is probably contrary to the weight of authority in this country. And with this statement we agree. However, the case at bar is plainly and clearly distinguishable from the holding in the Brown College case, as well as the holding in Robertson v. Renshaw, supra, and Boone College v. Forrest, supra. In the case at bar there is no question of actual manual delivery; there is no question of escrow; there is no question of recall involved. This case is in class five of the above enumerated classes and may be designated as a safety box case. These safety box cases are far removed from the escrow cases,

as well as from the cases of actual manual delivery, and as well as the cases of symbolic delivery.

Now let us determine, if we can, the rule to be applied in Iowa as to the class of "safety box" cases. These cases involve facts showing the execution of a deed which is laid away some place in a safety deposit box or other receptacle, wholly under the grantor's control, the grantor continues to use the property as his own, and finally dies. It would only lead to confusion to attempt to consider this class of cases in connection with or in the light of the cases of actual or symbolic delivery. The question here to be determined is, Is there a legal delivery of a deed, executed as in the instant case, and placed in the grantor's deposit box, with grantor retaining the key and also retaining control, dominion and possession of the property conveyed? It must be conceded that we have so held in Robertson v. Renshaw, supra, but that case is based upon decisions in other cases which do not fall within the class of the so-called "safety box" cases. And we do not feel that we should follow that decision. Neither do we feel that the Brown College case or the Robertson v. Renshaw case should be longer considered as the fixed, determined, and correct rule of this state in such class of cases.

We prefer to follow the rule laid down in Miller v. Murfield, 79 Iowa 64, 44 N. W. 540, where the deed was duly executed and found in an envelope of the grantor after his death, and this court held there was no delivery. Also in Hutton v. Smith, 88 Iowa 238, 55 N. W. 326, a deed had been executed and placed of record by the grantor and then kept in a tin box in her room from which it was removed after her death. It was held that there was no delivery. It would seem that the placing of the deed of record by the grantor herself was a clear manifestation of intent to deliver, but this court held there was no delivery. So too, in the case of Shetler v. Stewart, 133 Iowa 320, 107 N. W. 310, 110 N. W. 582, the grantor executed deeds to his relatives, locked them in his strongbox in a safe, and after his death a servant brought the keys and the box was unlocked and the deeds were taken away by the grantees. This court speaking through Justice Bishop held there was no delivery, and that the deeds were invalid, and said (page 324 of 133 Iowa, page 312 of 107 N. W.), "Under such circumstances the law *presumes* that no delivery had ever been made."

What has become of this *presumption* of no delivery? It

apparently has been transformed into a presumption of delivery, if we sustain the trial court in the instant case and follow comparatively recent decisions of this court.

The Lathrop v. Knoop case, supra, to which we have referred, is another case quite recently holding under similar circumstances that there was no legal delivery. It would seem that the Lathrop case would be absolutely determinative of the case at bar were it not for the three recent cases to which we have referred. Davis v. Brown College, supra; Robertson v. Renshaw, supra, and Boone Biblical College v. Forrest, supra.

Blain v. Blain, 215 Iowa 69, 244 N. W. 827, is another case which does not involve escrow or manual or symbolic delivery, but is a plain case of a deed duly executed and left in grantor's safety box where it was found after his death, and this court held there was no delivery. If the deed in the instant case was delivered, then it is because the court now holds that a deed found in a grantor's safety box is a good delivery, and it cannot be so held either in logic or in law. But the appellees say, and the lower court so held, that there was extraneous evidence bearing on the execution of the deed in question sufficient to clearly show the intent of Miss Aken in executing the deed in question and depositing it in her safety box. This evidence proves nothing as to delivery unless we want to conclude that delivery is proven by evidence of the making of a deed. All there is to show delivery in this case is that the deed was prepared and executed by Miss Aken; that she told others that she wanted the plaintiffs to have the property, and that she had prepared papers so providing. She put the deeds in her safety deposit box and retained the key. We do not think these admitted facts show a legal delivery of the deed in question. If it is true, as claimed by appellees, that the execution and deposit of the deed in question constituted a legal delivery and passed title, when did the title pass? Was it when the deed was deposited in the box, or upon the death of the grantor? If the latter, then the conclusion is that the grantor's death constituted delivery. If this court now holds in the instant case that the facts, as disclosed in this record, constitute a valid and legal delivery effecting a transfer of the title, it certainly would be a departure from the ancient land marks which the fathers have set up.

■■■ It must be remembered that in many of the cited cases where there had been a delivery of the deed after the death of

the grantor, that the burden was on the parties attacking such delivery. While in the case at bar the burden is on the plaintiffs to establish any kind of an effective delivery, and this, we determine, they have failed to do. In the Renshaw case the deed was in the possession of the grantee and had been recorded and, necessarily, the burden was upon the representative of the grantor to disprove delivery. While in the case at bar the grantees never had the deed; had never even seen it; it had never been recorded, and the form of action chosen in this case is a replevin suit brought against the administrator of the grantor for the possession of the deed. And again in the Renshaw case the grantees were the children of the grantor, while in the instant case the grantees are not even collateral heirs.

But it is said that the rule of delivery as (erroneously announced) in the Brown College, Robertson v. Renshaw, and Boone College cases has become a rule of property, and that it ought not now be disturbed. The answer to this is that these three cases stand alone as supporting the rule therein announced and that such rule is no more a rule of property than the rule announced in Lathrop v. Knoop, supra, and other cases therein cited, and more recent cases following the rule therein announced. See Goodman v. Andrews, 203 Iowa 979, 213 N. W. 605; Keating v. Augustine, 213 Iowa 1336, 241 N. W. 429, in which latter case Judge Grimm made quite a thorough review of our prior cases and in which no mention was made of Newton v. Bealer, supra; Leighton v. Leighton, supra; or McKemey v. Ketchum, supra. And the Brown College case is only referred to as having collected many of the Iowa cases and commented thereon, and there is no reaffirmance or following of the ruling in the Brown College case in Judge Grimm's opinion.

We conclude that the rule announced in Lathrop v. Knoop, supra, Goodman v. Andrews, supra, and Arndt v. Lapel, supra, is the better rule and should be adopted, followed and reaffirmed as the definite and fixed rule of this court in this class of cases. We will thus have returned to the long and well established rule and be in step with our sister states, and supported by the great weight of authority.

Without further extending this already too voluminous opinion, we are constrained to hold that the trial court erred in its finding and determination of the issues in the instant case, and that such findings and order must be reversed and the case

remanded with instructions to enter an order and judgment finding that the deed in question was not delivered and was not effective to pass title to the grantees therein named.

. The case of Davis v. John E. Brown College, 208 Iowa 480, 222 N. W. 858, Robertson v. Renshaw, 220 Iowa 572, 261 N. W. 645, and Boone College v. Forrest, 223 Iowa 1260, 275 N. W. 132, in so far as they are in conflict with this opinion are hereby overruled.—Reversed and remanded.

STIGER, C. J., and MITCHELL, KINTZINGER, RICHARDS, and SAGER, JJ., concur.