LILLIE M. WHITE *et al.* Appellees, *vs.* ORA A. WILLARD *et al.* Appellants.

*Opinion filed February 20, 1908.*

1. WITNESSES—*grantees are incompetent to testify to delivery when deeds are attacked by devisees.* In a suit by devisees to set aside deeds of their testator the grantees are incompetent to testify in their own behalf on the question of delivery of such deeds.

2. SAME—*when widow may and may not testify as to delivery of deeds to her sons.* Where deeds to the grantor's sons are attacked by his devisees, the widow cannot testify as to the delivery of one of the deeds which reserved a life estate in her, as survivor, greater than her dower interest; but she may testify as to the delivery of the other deed which reserved no life estate, and which, if given effect, would deprive the widow of her dower in the land conveyed.

3. DEEDS—*courts of equity are inclined to uphold voluntary settlements.* Courts of equity are inclined to uphold deeds of voluntary settlement to persons having natural claims upon the grantor's bounty, and will do so unless impelled to the opposite conclusion by strong and convincing evidence.

4. SAME—*the grantor's intent is of first importance in deeds of voluntary settlement.* In determining the question of the delivery of a deed of voluntary settlement the grantor's intention to presently vest title in the grantees is regarded as of more importance than the mere manual possession of the deeds.

5. SAME—*what does not make a deed testamentary in character.* A provision in a deed of voluntary settlement reserving to the grantors, during their natural lives, the use and control of the premises, and stating that "the title of said grantees, as joint tenants, in equal parts, in said land shall become absolute only on the death of" the grantors or the survivor of them, does not render the deed testamentary in character, so as to require it to be executed with the formality of a will.

6. SAME—*deed conveying fee simple title to commence in futuro is valid.* A deed conveying a fee simple title to commence *in futuro* is valid if executed and delivered, even without the creation of any intermediate estate to support it.

7. SAME—*provision requiring the grantor's written consent to alienation does not make deed testamentary.* A provision in a deed of voluntary settlement requiring the grantees to accept the conveyance with the condition that they shall not convey or encumber the land during the lifetime of the grantor without his consent in

writing does not make the deed testamentary, and its presence confirms the claim that the deed was delivered with the intention of immediately vesting title in the grantees.

8. SAME—*when evidence of delivery of one deed affords inference that the other was delivered.* Where deeds are made at the same time to the same grantees as a voluntary settlement, both deeds being kept in the same envelope, competent evidence showing the delivery of one of such deeds affords a strong inference that the other was also delivered, although the witness who testified as to the delivery of the former is incompetent to testify as to the delivery of the latter.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

This is a bill in equity filed in the circuit court of Champaign county by certain devisees under the will of Charles H. Willard, against Ruth A., Ora A. and Grover Cleveland Willard, for the purpose of setting aside two deeds made on May 8, 1905. Three grounds are alleged in the bill as a basis for setting aside the deeds:

*First*—Want of mental capacity in the grantor, Charles H. Willard. The master in chancery to whom the cause was referred, and the circuit court, both found against complainants upon the question of mental capacity, and since complainants have assigned no cross-errors, this question is eliminated and need not be further noticed.

*Second*—It is alleged in the bill that the two deeds in question were never delivered.

*Third*—It is contended that the deeds were testamentary and void because not executed in conformity with the Statute of Wills. If the deeds in question are inoperative or void, the lands described in them passed, together with other lands, under the will of Charles H. Willard to his devisees.

The most serious controversy relates to the delivery of the deeds. While the deeds were both executed at the same time and in pursuance of the same general purpose, the evidence upon the question of delivery is clearer with respect

to the deed conveying 240 acres of land than it is in sup-, port of the deed conveying 120 acres. This results from the incompetency of Ruth A. Willard to testify concerning the delivery of the 120-acre deed while she is clearly competent to testify as to the other.

The cause was referred to a master in chancery to take the evidence and report his conclusions of law and fact. Upon the evidence taken before the master he found against the complainants and recommended a decree dismissing the bill for want of equity. His findings were objected to by complainants below and exceptions were preserved, upon which the cause was heard in the circuit court. The circuit court sustained the exception to the finding of the master that the deeds in question had been delivered, but overruled the exception preserved to the finding that the grantor was competent to make a valid conveyance. A decree was entered setting aside the deeds on the grounds that they had never been delivered in the lifetime of the grantor, and that they were testamentary in character, and void because not executed in conformity with the Statute of Wills. From this decree the grantees in said deeds have prosecuted an appeal to this court.

W. R. WEBBER, and J. B. MANN, for appellants.

JOHN J. REA, and RAY & DOBBINS, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The first question to be determined is whether the two deeds in question were delivered in the lifetime of the grantor.

Charles H. Willard was a resident of Champaign county. He died on March 13, 1906, at the age of eighty-four. He had been married twice and had children by both marriages. He had accumulated a considerable estate, consisting of several hundred acres of land and about $30,000 of per-

sonal property.   At the time of his death he left five chil-
dren surviving him, namely, Lillie M. White, Franklin D.,
Samuel, Ora Arthur and Grover Cleveland Willard.   He
also left a number of grandchildren, descendants of two de-
ceased children.   Several years before his death he under-
took the distribution of his property among his children.
He gave each of them a deed to 40 acres, except Ora A.
and Grover Cleveland Willard.   Subsequently he gave to
two of them, Franklin D. and Samuel Willard, a deed to
573 acres in Lawrence county.   He owned 360 acres in
Champaign county, which land was estimated to be worth
$100 to $125 per acre.   The Lawrence county land was
worth from $50 to $60 per acre.   Appellants, Ora A. and
Grover Cleveland Willard, were young men still residing
with their parents.   They had not received any land from
their father.   There was a provision in the will by which
these two sons were to receive 40 acres each, to equalize
them with the other children.   The evidence shows that
Charles H. Willard determined to execute the deeds in ques-
tion to the two younger sons for the purpose of making
their distributive shares equal to those given to Franklin D.
and Samuel Willard.   With this object in view Charles H.
Willard sent a request for Charles M. Webber to come to
his house.   Webber called at the Willard residence, and
Charles H. Willard explained to him what he desired to do
with reference to making a conveyance to his two sons.
Webber testifies that Willard gave him directions about
making the deeds, and told him that his object was to equal-
ize the interests of the two younger boys with the two older
ones, to whom he had conveyed the Lawrence county land.
Willard explained to Webber that he considered one acre
in Champaign county equal to two in Lawrence county, and
that on this basis he figured that he could divide the land
equitably among the four boys.   From the evidence it ap-
pears that at this time it was Willard's intention to divide
his landed estate among his four sons and that his daughter

was to be provided for out of the personal estate. After obtaining full directions concerning the execution of the deeds, Webber went to his office, prepared the deeds and returned with them to the Willard residence. The deeds were read over by Webber to Willard and his wife, and were then executed by them and duly acknowledged before Webber as notary public. The deeds were left in the possession of the grantors. Ruth A. Willard put the deeds in an envelope and placed them in a bureau drawer, where her husband kept other valuable papers. Neither of the boys was at home at that time. Mrs. Willard testifies that when Grover C. came home that evening she got the deeds from the bureau drawer and delivered them to him in the presence of her husband; that Grover took the deeds from the envelope and examined them, and handed them back to his mother with the request that she put them away for him; that she again took the deeds and returned them to the bureau drawer, where they had previously been. She testifies that when Ora A. came home on Saturday evening she again took the deeds from the bureau drawer and handed them to Ora A., who, after looking at the deeds, gave them back to his mother with the request that she keep them for him.

The two sons both testify that their mother delivered the deeds to them in the presence of their father and with his knowledge, and that the deeds were kept by their mother for them until their father's death. But the evidence of the two sons is incompetent under the second section of chapter 51 of the Revised Statutes of 1905. The complainants in this suit are suing as devisees under the will of Charles H. Willard, and therefore the interest of these two grantees renders them incompetent. The deed to the 120-acre tract reserves a life estate in favor of the widow. Her interest under the deed to this tract is greater than it would be under the statute. She is also, therefore, incompetent to testify against the interests of the devisees so far as the deed

to the 120 acres is concerned. But the case is different with respect to the deed to the 240 acres. There is no reservation of interest to her in that deed. If the deed is upheld she will be deprived of her dower. Her interest, therefore, in the suit, so far as the 240-acre tract is concerned, is with the complainants and against the sons. She was clearly competent to testify as to the delivery of the deed for the 240-acre tract. Her evidence clearly establishes a complete and valid delivery of both deeds. The conveyances having been made at the same time and in the furtherance of the same object, and the deeds being kept together in the same envelope, competent evidence which proves the delivery of one of the deeds affords a strong inference that the other deed was also delivered.

The evidence on behalf of appellees which is relied upon to prove that the deeds were not delivered consists of some statements alleged to have been made by appellants to various persons, to the effect that they had never seen the deeds until after their father's death. There is also evidence that Ruth A. Willard stated, after the death of her husband, to the complainants, in the presence of her fifteen-year-old daughter, that the grantees had never seen the deeds until after the death of the grantor. These several alleged admissions were denied by the grantees in the deeds and Mrs. Willard contradicts the statement imputed to her by the complainants and her daughter. On the morning of March 14, after Willard died on the 13th, John Sampson, a son of Mrs. Willard by a former marriage, at the request of Ora A. Willard called upon Mrs. Willard for the deeds for the purpose of having them recorded. They were delivered to the recorder on the 14th of March and after they were recorded they were mailed to the grantees. H. V. Jones testified that Charles H. Willard told him in the summer of 1905 that he had divided up with "the boys and the old lady;" that he divided the home place. Charles Lemon testified that Willard told him two or three times that he had

given his land away, or most of it, except a life interest in one place; that he said, "They would have it some day and might as well have it now and save trouble;" that he was going to give the land to the boys and that there were some of the family he was going to cut off.

Such is the substance of the testimony bearing on the question of the delivery of the deeds. Upon these facts the master, who saw the witnesses and heard them testify, found that there was a delivery of the deeds, while the court found that the deeds were not delivered.

When the owner of property in good faith makes a voluntary conveyance of it to those who would naturally have a claim upon his bounty, courts of equity are strongly inclined to uphold the conveyance, and will do so unless impelled to the opposite conclusion by strong and convincing evidence. There is in such cases a high degree of mutual confidence sustained between the parties. It often happens that the beneficiary, because of tender years and want of discretion, is unable to comprehend and protect his own interests. In view of these considerations courts of equity do not attach so much importance to the mere manual possession of the deed as they do to the intent of the grantor, as gathered from the whole evidence, in regard to the vesting of the title. If the intention of the grantor to pass the title presently to the grantee is satisfactorily made out by the proofs, courts of equity have usually sustained such conveyances even in cases where the manual possession of the deed remained with the grantor. (*Souverbye* v. *Arden,* 1 Johns. Ch. 256; *Bryan* v. *Wash,* 2 Gilm. 557; *Cline* v. *Jones,* 111 Ill. 563; *Douglas* v. *West,* 140 id. 455; *Miller* v. *Meers,* 155 id. 284; *Chapin* v. *Nott,* 203 id. 341; *Henry* v. *Henry,* 215 id. 205; *Creighton* v. *Roe,* 218 id. 619.) This is the well settled law in this State. In *Chapin* v. *Nott, supra,* this court said, on page 347: "The law has a regard for the relationship of the parties and the motives that are presumed to dictate such conveyances and the degree of con-

fidence which the parties, standing in such relation, as donors and donees of valuable property, are presumed to have, and in such case the presumption of law is that there was a delivery, and when brought in question the burden is upon the grantor, or those claiming adversely to the donee or beneficiary, to show clearly that there was no delivery." In *Henry* v. *Henry, supra,* on page 211, this court said: "In cases of voluntary settlement the mere fact that the grantor retains the deed in his possession is not conclusive against its validity, if there are no other circumstances, besides the mere fact of his retaining it, to show that it was not intended to be absolute." The above rule, which was first announced by this court in *Bryan* v. *Wash, supra,* has been uniformly followed down to the present time.

Under the evidence in this record and the rules of law announced in the foregoing authorities the deeds in question were delivered, and the court erred in sustaining the exception to the master's finding on this question.

It is alleged in the bill that the deeds in question are testamentary in character, and that they should for that reason be held inoperative and void. This contention is based, as to the deed for 120 acres, upon the following reservation in the deed: "But the grantors herein hereby expressly reserve the use and absolute control of said premises for and during the period of their natural lives, and the title of said grantees as joint tenants, in equal parts, in said lands shall become absolute only on the death of said Charles H. Willard and Ruth A. Willard, or the survivor of either of them." In the view we take of the foregoing clause it has no other effect than to reserve a life estate in the grantor and his wife and the survivor of them. While it is not necessary to determine whether the estate of the grantees is a vested remainder in fee or contingent upon the grantees surviving their parents, we are inclined to the opinion that a fair construction of the clause would give the grantees a vested estate in remainder. There could be no doubt about

this view were it not for the survivorship clause in regard to the grantees. The use of the word "absolute," in reference to the title that the grantees are to have, seems to imply that the grantees were to take a title presently, but that such title would not be perfect but would become so on the death of the grantors. The thing that was to be united with the title of the grantees on the death of the grantors and by which it would "become absolute," was the "use and absolute control of said premises," which was expressly reserved to the grantors during their natural lives. But even if the deed be construed as conveying a fee simple title to commence *in futuro*, under the well settled law of this State the deed, if executed and delivered, is valid. Since livery of seizin is no longer necessary to a valid conveyance, an estate in fee may be conveyed to commence in the future, without the creation of any intermediate estate to support it. (*Shackelton* v. *Sebree*, 86 Ill. 616.) But there was here a life estate reserved to the grantors as to the deed now under consideration, which was all that was required when livery of seizin was one of the formalities of a conveyance. The deed to the 240-acre tract contained the following clause: "This conveyance is made to Ora Arthur Willard and Grover Cleveland Willard in equal parts, as part of their distributive share of the estate of Charles H. Willard, and said grantees accept this conveyance with the condition that under no circumstances shall they convey or encumber said lands during the lifetime of said Charles H. Willard without his written consent thereto." The above clause not only does not show that the conveyance was testamentary, but it expressly recognizes the title as being vested in the grantees, with the right to convey and encumber the same, upon the condition that the written consent of Charles H. Willard be obtained. If the deed had not been delivered or if it was not to take effect until after the death of the grantor the clause above quoted would be wholly unnecessary. In our opinion the clause tends to confirm the claim that

this deed was delivered with the intention of vesting title in the grantees immediately, and that the only object of inserting the condition was to protect the grantees from the improvident disposition of the land.

It results from the views herein expressed that the decree of the circuit court is erroneous. Accordingly it is reversed and the cause remanded to the circuit court of Champaign county, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*