## Phillips et al. *v.* Decker et al.

[No. 10,294.   Filed June 1, 1920.]

1.   APPEAL. — *Review.* — *Verdict.* — *Presumptions.* — *Burden of Showing Error.*—Every presumption is in favor of the regularity of the general verdict, and the burden is on appellant to overcome that presumption.   p. 378.

2.   DEEDS.—*Validity.*—*Delivery.*—In an action for partition, evidence *held* sufficient to warrant the jury in finding that defendant's father made a deed to her of the land which she claimed and left it with the notary public who prepared it with the understanding and intention that the deed, together with others conveying the balance of grantor's realty, should be delivered to the grantees.   p. 381.

3.   DEEDS.—*Voluntary Settlements.*—*Presumption as to Delivery.* —The law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale.   p. 382.

From Tippecanoe Superior Court; *Isaac E. Schoonover,* Special Judge.

Action by Henry W. Phillips and others against Alida A. Phillips Decker and her husband, in which the named defendant filed a cross-complaint. From a judgment for defendant on her cross-complaint, the plaintiffs appeal. *Affirmed.*

*Dan W. Simms, Samuel U. Simms, Stuart, Hammond & Stuart,* for appellants.

*George P. Haywood, Clyde H. Jones* and *C. V. McAdams,* for appellees.

McMAHAN, C. J.—Oscar W. Phillips was the owner of 203.26 acres of land in Tippecanoe county. He died in 1916, leaving appellants and appellee Alida A. Phillips Decker as his only heirs. This is an action by appellants against appellee Mrs. Decker and her husband, wherein the appellants allege that Oscar W. Phillips died the owner of said land, and asking for partition. Appellee Mrs. Decker, who is the daughter of Oscar W. Phillips, filed a cross-complaint in which she alleged that her father did not die the owner of all of said land, but that in April, 1915, he conveyed 123.26 acres of said land to her. The cause was tried by a jury and resulted in a verdict and judgment in favor of appellee on her cross-complaint, quieting her title to said 123.26 acres.

The only error assigned by appellants relates to the action of the court in overruling their motion for a new trial. Their contention is that the verdict is not sustained by sufficient evidence, and that the court erred in giving to the jury instructions four and five requested by appellees. The evidence shows without conflict that on April 29, 1915, Oscar W. Phillips signed and acknowledged three deeds, one purporting to convey to appellee Mrs. Decker the 123.26 acres, one purporting to convey forty acres to his daughter Sallie Norris, the other purporting to convey forty acres to his grandchildren, Marien Phillips Margaret Phillips, Georgie Phillips and

Oscar W. Phillips, Jr. In the first two of said deeds, the grantor reserved for himself the rent, income and profit of the land described therein for and during his natural life. The deed to said grandchildren contained the same clause and also reserved the rent, income and profit of the land therein described to the use and benefit of Frank C. Phillips and Lottie Phillips his wife, from and after the death of the grantor, for and during the natural lives of said Frank C. and Lottie Phillips. At the time these deeds were signed and acknowledged, they were left with the notary who prepared them and who took Mr. Phillips' acknowledgment thereto and in whose possession they remained until after the commencement of this action. Appellants contend that the deed to appellee Mrs. Decker was left with the notary to keep until called for by Mr. Phillips, while the appellees contend that it was left with the notary with direction to deliver it to Mrs. Decker upon the death of the grantor.

The jury by its verdict found that this deed was left with the notary with the intention that it should be delivered to Mrs. Decker, and not to be returned to the grantor. Every presumption is in favor of the regularity of the verdict and the burden is on the appellants to overcome that presumption. If there is any evidence showing that it was the intention of Oscar W. Phillips when he left the deed with the notary that it should be held by the notary and be delivered to Mrs. Decker, or if there is any evidence from which such an inference can be drawn, the verdict must be upheld.

We do not deem it necessary to set out the testimony of the several witnesses in detail. There is evidence showing that Oscar W. Phillips at the time the deed in question was made was a widower, eighty-three years old. Appellee Mrs. Decker lived with him and cared for him in his declining years. He had often said that

it was his intention to see that she was well paid for the care and attention she had given him, and that he wanted her to have a good home. Several years before his death, which occurred in 1917, he erected a new home on the 123 acres described in the deed to Mrs. Decker. This house was provided with all the modern improvements including heat, lights, etc. He had a number of conversations with a brother, while he was having this house constructed and also before and after it was constructed, about the expense of building such a house, and in that connection he would speak about Mrs. Decker, saying he wanted her to have a good home; that she had been good to him, and he was going to see that she was provided for. He and his brother had talked about the ease with which wills are set aside by juries, and that if he made a will a jury might think he had not done as he should have done and set it aside. Mr. Phillips in one of these conversations said he knew that such a thing might happen if he made a will and that he was going to deed his property. On another occasion in a conversation with his brother, and while he was building the new house, he said he had not made the deeds yet, but that he was going to make them. In a conversation with his brother, after the deeds were made, he told the brother he had done what they had talked about before—that he had made the deeds. He told other people, both before and after the deeds were left with the notary that he intended to give the "home place" to Mrs. Decker. He told others that he had "fixed his property the way he wanted it." There is evidence that he gave the notary directions relative to the deeds and that the notary agreed to comply with such directions.

At the time Mr. Phillips left the three deeds with the notary, he had a cataract on each eye and was preparing to have them removed. On the day when the

deeds were made, he said he wanted to go to Lafayette to attend to some business, that he was going to fix his property before he had the operation performed, so that if anything happened to him his property would be left as he wanted it after he was gone. After the deeds were signed and acknowledged he left them with the notary, at which time the notary told him that he would do with the deeds as Mr. Phillips had directed; that Mr. Phillips asked the notary what he should do with the deeds, and was told by the notary that he could either deliver them or record them, and that they would not be valid unless they were delivered over to the notary or to the grantees named in the deeds or recorded. After this conversation and in the presence of Mr. Phillips, the notary placed the three deeds in an envelope and wrote thereon the words, "Oscar W. Phillips, deeds to his children and grandchildren," and then put them in a safety deposit box in his vault, where they remained until after the death of Mr. Phillips. One of the clerks in the office of the notary testified that Mr. Phillips requested the notary to keep the deeds and take care of them for him until he called for them, while another witness, who was present at the time, testified that nothing was said about Mr. Phillips calling for the deeds or about the notary keeping or taking care of the deeds for Mr. Phillips. The consideration named in each of these deeds was "one dollar and natural love and affection."

The notary with whom the deeds were left testified that Mr. Phillips requested him to keep the deeds until he called for them and denied that Mr. Phillips had given him instructions to deliver them to the grantees named in the deeds. The testimony of the notary and of his clerk who testified were so weakened and discredited on cross-examination that the jury evidently disregarded the same. It appears that some time prior

to the making of said three deeds, Mr. Phillips had conveyed other real estate to his son Henry, who was appointed administrator of his father's estate, and who is one of the appellants herein, and that the notary became and was thereafter the attorney for Henry in the settlement of the estate, although he does not appear as an attorney of record in this case. There are many circumstances and details in the evidence which warranted the jury in finding that it was the intention of Mr. Phillips in making these three deeds including the one to Mrs. Decker, to make a voluntary settlement and division of his property in contemplation of death without making a will. And, as said by Chancellor Kent in *Souverbye* v. *Arden* (1814), 1 Johns, Ch. (N. Y.) 240, 256: "A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof, that he never parted, nor intended to part, with the possession of the deed; * * *."

When we consider the whole of the evidence, including the statement of Oscar W. Phillips made on the day when the three deeds were signed and acknowledged that he was going to fix his property before he had the operation, and his statements made prior thereto as to his intention to make deeds dividing and disposing of his property, his statements made after that time, in which he said that he had made such deeds, and had so fixed his property that it would go as he wanted it to go after his death without making a will, and his statements when he first spoke to the notary in which he told the notary that he was going to make some deeds and leave them with the notary, there was some evidence showing his intention to do, and that it was his understanding that he had done, everything necessary to be done by him to carry out that intent and purpose when he signed and acknowledged the deeds and left them with the notary. The notary informed Mr. Phil-

lips that, before the deeds would be valid, they should be delivered to the grantees or someone for them. With that information he left them with the notary, and there is sufficient evidence to warrant the jury in finding that he did so, with the understanding and intention that they were to be delivered to the grantees by the notary. This finding and conclusion is also supported by the fact that, after the death of Mr. Phillips, the notary, when called upon for the deeds, looked for them in a filing box marked, "Papers for delivery to third parties."

3. The law always makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale. The verdict is sustained by sufficient evidence.

Appellants make complaint of certain instructions given the jury at the request of appellees. We have given each of these instructions careful consideration and hold that they are not subject to the objections urged against them. Appellees have assigned cross-errors, but, in view of the conclusions 'reached on appellants' assignment of error, we need not give them any consideration.

Judgment affirmed.