(No. 20086.—

HARRY PAYNE *et al.* Plaintiffs in Error, *vs.* ARMINTA HENDERSON *et al.* Defendants in Error.

*Opinion filed June 20, 1930.*

REARICK & MEEKS, for plaintiffs in error.

LEWMAN & CARTER, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Harry Payne and Benjamin Payne, (hereafter referred to as plaintiffs in error,) who are sons of a deceased daughter of D. B. Sanders, deceased, filed their bill in the circuit court of Vermilion county asking that a certain deed executed by their grandfather on May 22, 1919, wherein his grand-daughter, Nettie Larrance, was named as grantee, be set aside and the real estate described therein be partitioned among plaintiffs in error and Arminta Henderson, the mother of Nettie Larrance, who are the only heirs-at-law of Sanders. The bill was based upon the theory that the deed was void for want of delivery. Arminta Henderson and her two children, Nettie Larrance and Daniel Henderson, who are the defendants named in the bill, filed an

answer denying the material allegations of the bill with reference to the delivery of the deed and later filed a cross-bill. The cause was referred to a master in chancery to take the proof and report his conclusions of law and fact. During the hearing of the cause before the master it was discovered by counsel for Nettie Larrance that the point of beginning set forth in the description of the land in the deed of May 22, 1919, was incorrect, in that it should read 20 rods from a certain point instead of "20 feet." The defendants to the original bill filed an amended cross-bill, setting forth the presence of the alleged latent ambiguity and stating that a construction of the deed would be required by the court. They further alleged that the grantor, Sanders, at the time of the execution of the deed was not the owner of the land as described in such deed and in the original bill as filed by plaintiffs in error; that the law presumes the grantor intended to convey the property he did own at the time, and that where two descriptions occur, the one most favorable to the grantee should be adopted. The cross-bill set forth the correct descriptions of the land owned by the grantor at the time of making the deed and of the boundary lines described therein. Among other things set forth in the cross-bill it was averred that the deed of May 22, 1919, was a complete conveyance of the property to Nettie Larrance, subject to the life estate reserved therein by the grantor; that since the death of her grandfather the grantee has been in possession of the premises and paid the taxes thereon, and that she claims no interest in a narrow strip approximately 11 feet by 222 feet out of the northwest corner of the tract, which was included in a deed executed by her grandfather to one Mote during March, 1921. The cross-bill prayed that the court construe the deed of May 22, 1919, declaring the latent ambiguity and that the title be decreed in Nettie Larrance. The answer of the plaintiffs in error filed to the original cross-bill was permitted to stand as the answer to the amended cross-bill. After

a hearing the master made his report, finding the deed of May 22, 1919, was a voluntary settlement and that there was a legal delivery of the instrument; that there was a latent ambiguity in the deed, and it should be construed to convey to Nettie Larrance title to the property as described in the amended cross-bill. A decree was recommended in accordance with the prayer of the cross-bill. Objections to the report stood as exceptions before the chancellor, by whom the same were overruled and a decree was entered substantially in accordance with the recommendations made by the master. Plaintiffs in error made a motion that the costs incurred by the cross-bill be taxed against the cross-complainants, but this motion was denied, and all costs were taxed against the plaintiffs in error. They have sued out a writ of error to review the record.

The facts presented by this record are substantially as follows: D. B. Sanders for many years just prior to his death in 1925 lived on a five-acre tract of land in the village of Ridgefarm, Illinois. His wife died during 1917, and shortly thereafter he requested and arranged for his grand-daughter, Nettie Larrance, a widow with two small children, to come and live with him and keep house for him. He was about seventy-nine years of age at that time. He was a stockholder and director of the First National Bank of Ridgefarm and had a safety deposit box in that bank. In one of his conversations with the vice-president of the bank he told the bank official that he expected to take care of his grand-daughter, Nettie, and asked the banker the best way to fix his property. The banker referred him to R. W. Fisk, a local attorney. On May 22, 1919, Sanders went to Fisk's office and told him that he wished to make a deed to his grand-daughter, Nettie Larrance, for the "home place" where he lived. He told Fisk that Nettie had come to his house and made a home for him; that she expected to continue to do that as long as he lived and that he wanted to compensate her by giving her the home place. A deed

to the five-acre tract was prepared by the attorney and executed by Sanders. It was dated May 22, 1919, was acknowledged before Fisk as a notary public and the grantor took possession of the instrument. At that time he remarked to his attorney, "Now Nettie is provided for." The property described in the deed was as follows: "Commencing on the southern boundary line of Main street (formerly West street) in the village of Ridgefarm, Illinois, and twenty (20) feet east of the east line of Third street in said village of Ridgefarm, Illinois, thence south along the eastern boundary line of the plot of land heretofore deeded by James Ward and wife to Alfred Hester, forty (40) rods, thence east twenty (20) rods, thence north forty (40) rods to the southern boundary line of said Main street, thence west twenty (20) rods to the place of commencing, in section thirty-one (31), township seventeen (17) north, range eleven (11) west of the 2d P. M., situated in the county of Vermilion in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this State." The deed contained the following provision: "The grantor expressly reserves the possession, use and occupation of said premises for and during his natural life," and the consideration specified therein was "one dollar and pure love and affection." The place of beginning in the description of the property set forth in the deed should have been 20 rods east of the east line of Third street instead of 20 feet east of the east line of Third street. As disclosed by the proof in the record this five-acre tract was located on the south side of Main street, in the village of Ridgefarm, and its west boundary line was 20 rods east of the east line of Third street. It was 40 rods long north and south and 20 rods wide east and west. The property lying east of Third street and west of the west line of the grantor's five-acre tract was owned by three other individuals, with the exception of a piece of property 48 feet and 10 inches wide east and west by 222 feet and 5 inches in

length north and south, which was located immediately west of the northwesterly corner of the five-acre tract in question. This small tract had a house upon it and was also owned and rented by Sanders. On March 16, 1921, Sanders executed a deed to Elmo Mote for a tract of ground on the south side of Main street and which was described as 60 feet east and west by 222 feet and 5 inches north and south. This parcel of ground included the aforesaid 48 feet and 10 inches owned by Sanders and lying west of the northwesterly corner of the five-acre tract, and also a strip of ground 11 feet 2 inches in width east and west and 222 feet 5 inches long north and south, located in the northwest corner of the five-acre tract or home place. There appears to have been some confusion in the manner in which these tracts of land were assessed upon the tax books, and the record shows that Sanders paid all the taxes on both the home tract of five acres and the property 60 feet in width deeded to Mote, from the time of the delivery of that deed until the grantor's death. Sanders also owned two parcels of farm land, one of 160 acres and one of 40 acres. On December 6, 1922, he engaged R. W. Fisk, the same attorney who drew the deed of May 22, 1919, to draft his will. By his will Sanders gave and devised to his daughter, Arminta Henderson, the 160-acre farm, and he devised the 40-acre farm to his three grand-sons, Daniel Henderson, Benjamin Payne and Harry Payne, the latter two of whom are plaintiffs in error. He gave practically all his personal estate to Nettie Larrance. At the time of the execution of the will by Sanders he said to attorney Fisk that it was no use to include the home place in the will as he had already deeded it to Nettie. She was named in the will as executrix, and the will was duly probated in the probate court of Vermilion county. The uncontradicted proof in the record shows that on several occasions Sanders spoke to different persons about having made the deed for the five-acre home place to Nettie Larrance and expressed his intention

that she should have the property. Upon the death of Sanders the deed of May 22, 1919, was found, with other papers belonging to him, in his safety deposit box in the First National Bank of Ridgefarm. The deed was in an envelope, upon which was written in Sanders' handwriting, "To Nettie Larrance." It was delivered to her by the vice-president of the bank and later recorded by her.

The main controversy in this case is as to whether or not there was a legal delivery of the deed executed on May 22, 1919, by D. B. Sanders to his grand-daughter, Nettie Larrance. The law on this subject has been discussed at length in many cases presented to this court. The adjudicated cases have established the rule that a delivery is necessary to make a deed valid. However, a delivery is not accomplished by any particular method or ceremony. The test in each case is the intention with which the act or acts relied on as the equivalent or substitute for a formal or actual delivery were done, and each case must therefore be judged by its own facts and circumstances. In the case of a deed which is a voluntary settlement the law presumes more strongly in favor of a delivery than it does in the case of bargain and sale. In ascertaining whether or not a voluntary settlement deed has been delivered the grantor's intention to vest title in the grantee is of greater importance than the mere actual or manual possession of the instrument itself. Such a deed may be effective to vest title in the grantee although retained by the grantor in his possession until his death, if other circumstances do not show an intention contrary to that expressed on the face of the deed. (*Riegel* v. *Riegel,* 243 Ill. 626; *Abel* v. *Schuett,* 329 id. 323.) Where the grantor reserves a life estate in the property and its possession and control, the retention of the deed is not inconsistent with the idea that delivery was intended and that the deed is operative. Such a reservation raises a presumption that the deed is intended to operate immediately as a conveyance of the future estate which is to vest in possession

at the termination of the life estate, since there would be no object in reserving a life estate if the deed were not to be effectual as a conveyance or was retained to prevent its taking effect until the death of the grantor. (*Hill* v. *Kreiger,* 250 Ill. 408.) It has been stated that where a grantor has reserved a life estate in land conveyed by him he is as much entitled to the custody of the deed as the grantee. *Humphreys* v. *Humphreys,* 300 Ill. 46.

It is the contention of plaintiffs in error that the execution and delivery of the deed conveying the piece of ground 60 feet by 222 feet and 5 inches to Mote on March 16, 1921, and keeping the consideration of $1200 received therefor, shows conclusively that Sanders did not intend the deed executed by him to his grand-daughter on May 22, 1919, to be effective when executed, and that there was no delivery of the latter deed on that date, as decreed by the chancellor. The amount of ground taken from the northwest corner of the five-acre tract (or home place) and included in the deed to Mote was a narrow strip 11 feet 2 inches wide east and west by 222 feet 5 inches long north and south. This record contains nothing to show the actual physical condition or location of this residence property owned and rented by Sanders. The property as occupied, laid out and used may have been the full 60 feet in width and may have extended over and upon the five-acre tract a distance of 11 feet and 2 inches for a long period of time—even before the deed of May, 1919, was executed. The tax records of this property showing its actual location were apparently in an unsatisfactory condition if the statements made in the briefs of counsel are correct, and it further appears that Sanders paid the taxes on this property for five years after he sold it. It may be that this strip within the five-acre tract was inadvertently included in the sale. However, if it was knowingly done, the amount of land is so inconsequential as compared with the entire five-acre tract that we cannot attach to that act alone, on the

part of the grantor, any serious intent of revoking his previous action or displaying thereby that his previous deed was not intended by him to be effective. We think the deed in question was made by Sanders to his grand-daughter as a voluntary conveyance. The undisputed facts previously stated in this opinion show his reasons for making the deed. He reserved to himself a life estate and kept the instrument in the same condition and in his own possession from the time it was executed until he died. There is but a single circumstance in this record even tending to show any other intention or purpose on the part of the grantor than that his grand-daughter should have the home place. After making the deed to Mote, Sanders had his attorney draft his will disposing of all of his other property, and the attorney was told by Sanders at that time not to include the home place in the will because he had already deeded it to Nettie Larrance. We are convinced from a consideration of all the evidence presented that the grandfather intended to have his deed of May 22, 1919, to his grand-daughter become effective at the time, and the chancellor properly held that the deed was a valid one and legally delivered.

Plaintiffs in error sought the aid of a court of equity, and the filing of a cross-bill on the part of the defendants to the original bill was permissible and proper. The issues presented thereby were properly considered by the chancellor. Apparently on account of the denials made in the answer of plaintiffs in error to the cross-bill it became necessary for cross-complainants to offer additional testimony. Under the state of the record we are unable to say the chancellor erred in the taxing of costs.

The decree of the circuit court of Vermilion county is therefore affirmed.

*Decree affirmed.*