MARY GLANCY FERRELL, Appellee, v. MRS. I. W. STINSON et al., Appellants.

No. 46338.

NOVEMBER 16, 1943.

C. M. Parker, of Cedar Falls, and Marty & Butler, of Mason City, for appellants.

Leming & Hobson, of Hampton, and H. S. McCluskey, of Phoenix, Arizona, for appellee.

GARFIELD, J.—The land in controversy is a farm of 220 acres in Franklin County, Iowa, subject to a mortgage of $2,500. Plaintiff asserts there was no valid delivery of the deed under which defendants claim. In her lifetime, the property was owned by Miss Mary Kamberling, who died on October 2, 1940, in Phoenix, Arizona. She was an only child who had inherited the farm

from her parents. She had no near relatives. From early childhood Mary was a cripple, who used crutches when she attended school in Iowa Falls, her girlhood home. She developed tuberculosis and about 1917 was taken to Phoenix, where she continued to live as an invalid until her death.

In Iowa Falls, Mary formed a most intimate and enduring friendship with Mrs. Esgate, one of the defendants, a daughter of the late Justice Weaver of this court. In 1916, Mrs. Esgate also moved from Iowa Falls to Phoenix and lived there until 1932, when she moved to Washington, D. C. Mary lived with Mrs. Esgate part of that time. After moving to Washington, Mrs. Esgate returned to Phoenix for about six weeks on each of five occasions, during which she did what she could to relieve Miss Kamberling, whose condition grew progressively worse. Miss Kamberling was indebted to Mrs. Esgate and her husband for money loaned her.

The other two defendants who, with Mrs. Esgate, were grantees of the deed, are Brooks Baughman, of Cedar Falls, Iowa, a first cousin of the grantor (apparently her nearest living relative), and Mrs. I. W. Stinson, of Mason City, Iowa, a distant cousin of Mary and a first cousin of plaintiff, Mrs. Ferrell, also a distant cousin of the grantor testatrix. Miss Kamberling was also attached to these three cousins, defendants Baughman and Mrs. Stinson, and plaintiff, Mrs. Ferrell, who visited and assisted her at times.

The deed under which the three defendants claim was executed on December 2, 1939, in Phoenix. Miss Kamberling, bedridden at the time, called in a young lady notary who lived next door, gave her a copy of a quitclaim deed she had filled in with pencil, and asked her to copy it on a typewriter. As directed, the notary typed the deed on another form which was duly signed, witnessed by two witnesses, and acknowledged. The grantor then handed the executed deed to her housekeeper, Mrs. Orbison, and asked her to put it in a little metal box in a closet opening into her bedroom. The servant did as directed and the deed remained in the box in the closet during the ten months until the grantor's death. The box was not locked and there is no evidence that there was a key for it.

About the time the deed was executed Miss Kamberling talked to the same notary about making a will. The notary, as requested, asked an attorney, Mr. Karz, to get in touch with Miss Kamberling. This attorney prepared a will and it was executed the following day, December 3d. The will provides for payment of debts of the testatrix; directs the sale by her executrix of her real estate in Phoenix, describing it, in the event her debts are fully paid from her personal property; leaves two legacies of $400 each and some personal belongings; and bequeaths all the rest and residue of her estate to plaintiff, Mrs. Ferrell. Following Miss Kamberling's death the will was admitted to probate both in Arizona and Franklin County, Iowa. Plaintiff claims the farm in question as residuary devisee.

Mrs. Flora Thompson was a close friend of Miss Kamberling, who was named in the will as executrix. On December 3d, the day the will was made, Miss Kamberling told Mrs. Thompson, in substance:

"I have made a deed of my Iowa farm to Mrs. I. W. Stinson, Brooks Baughman and Mrs. A. T. Esgate [the defendants], and the deed is placed in the box in the closet with other papers and after I am gone you are to take the deed out of the box and send it to Jane," meaning Mrs. Stinson.

In this conversation Mrs. Thompson told testatrix she had always done everything she could for her while alive and would be very glad to do what she could after Miss Kamberling was gone. Mrs. Thompson had frequently seen the box in the closet before that time, but did not see it again till the day after Miss Kamberling's death. Mrs. Thompson then found the deed in the box in the closet and on October 4, 1940, as directed by the grantor, mailed it to Mrs. Stinson at Mason City, who had it placed of record in Franklin county. When opened by Mrs. Thompson the box contained the deed, the will, some old canceled mortgages and checks, and some tax receipts. The box in which the deed was kept apparently was not used for current papers. The lease to the farm and bills were kept in a folder in a table drawer in the sickroom.

There is no doubt that Miss Kamberling desired and intended defendants should have this farm and believed she had effectively

conveyed the farm to them. The equity in the Iowa farm is worth approximately three times her other property, her personalty and Arizona real estate. It is plain that she intended to divide her estate in four nearly equal shares among her three cousins and her devoted friend, Mrs. Esgate. These four were the principal natural objects of her bounty.

The attorney who drew the will testified, without objection:

"At the time she gave me the information with respect to the will she told me she had disposed of her property in Iowa; that she had executed deeds to the people she wanted to have that property and * * * it would not be necessary to insert it in the will or be bothered with probate proceedings. * * * She told me specifically at that time she had disposed of the property by deed, and that all had been taken care of long before the will was drawn, that is, the property out of the State of Arizona."

· There is competent evidence that Miss Kamberling told the grantees of the making of the deed. She also told intimate friends she had deeded her Iowa farm to the three defendants. Mrs. Smith, an acquaintance of twenty years who wrote letters for the invalid, testified:

"Mary Kamberling had told me what disposition she had made of the Iowa land * * * Shortly after Mary Kamberling made her will I was at her house and she told me she had made her will which covered her Phoenix property. She said, 'Not the farm, the Iowa property,' because that was deeded to Mrs. Esgate, her cousin, Brooks (Baughman), and her cousin, Mrs. Stinson. * * * that she deeded [it] because they might break a will but a deed would secure the property and insure it going to the people she wanted it to go to."

Although the grantor lived ten months after making the deed and will, it fairly appears that she made them in contemplation of impending death. She was in the advanced stages of tuberculosis, with many complications, and was failing rapidly. There is no evidence she was able to or did leave her bed except to go to the hospital in January or February 1940, for an operation in an attempt to prolong her life.

It was stipulated upon the trial that, until she died, Miss Kamberling rented the farm, received the rents, and controlled its operation.

■ I. The deed having been duly executed and recorded, plaintiff has the burden of proving its nondelivery by evidence that is clear, satisfactory, and convincing. This is true even though the recording was after the grantor's death. Jones v. Betz, 203 Iowa 767, 768, 210 N. W. 609, 213 N. W. 282; Huxley v. Liess, 226 Iowa 819, 823, 285 N. W. 216; Hodgson v. Dorsey, 230 Iowa 730, 733, 298 N. W. 895, 896, 137 A. L. R. 456. Plaintiff does not question the above rule but contends the presumption of delivery has been conclusively rebutted.

■ II. Delivery is, of course, essential to the validity of a deed. Our own and other decisions hold that delivery depends very largely upon the intent of the grantor, to be determined by his acts or words, or both, and that a manual delivery is not essential if it appears that the grantor intended to relinquish dominion and control over the deed and have it take effect as a present conveyance of title. Annotation 129 A. L. R. 11, 12, and cases cited.

We have frequently said that actual manual transfer of the paper is not necessary and that acts and words evincing the grantor's intent to part with the deed and relinquish his right over it is a sufficient delivery. Kyle v. Kyle, 175 Iowa 734, 738, 157 N. W. 248; Keating v. Augustine, 213 Iowa 1336, 1339, 241 N. W. 429; Arndt v. Lapel, 214 Iowa 594, 607, 243 N. W. 605; Beery v. Glynn, 214 Iowa 635, 641, 243 N. W. 365. We have declared time and again that the intent of the grantor is the controlling element in the delivery of a deed. See, for example, Huxley v. Liess, 226 Iowa 819, 823, 285 N. W. 216; Bohle v. Brooks, 225 Iowa 980, 985, 282 N. W. 351; Goodman v. Andrews, 203 Iowa 979, 981, 213 N. W. 605.

■ This court has uniformly held that where an unrecorded deed is found in a box belonging to the grantor, after his death, without more, there is no presumption of delivery. Among cases of this kind are Blain v. Blain, 215 Iowa 69, 77, 244 N. W. 827; Shetler v. Stewart and Weber, 133 Iowa 320, 324, 107 N. W. 310, 110 N. W. 582; Miller v. Murfield, 79 Iowa 64, 44 N. W. 540. See, also, In re Estate of Martens, 226 Iowa 162, 283 N. W. 885,

and In re Estate of Cornish, 233 Iowa 596, 10 N. W. 2d 85, which, however, relate to personal property.

We have also frequently held that an effective delivery may be made by placing the deed in the hands of a third person, without reserving the right to recall it and with instructions to deliver to the grantee after the grantor's death. If the conveyance is beneficial to the grantee, the third person is presumed to act as the grantee's agent. The effect of thus placing the instrument with a third person is to reserve a life estate to the grantor with title immediately passing to the grantee but with the latter's right to possession and enjoyment postponed until the grantor's death. Among cases of this kind are Bohle v. Brooks, 225 Iowa 980, 985, 282 N. W. 351, and cases cited; In re Bell's Estate, 150 Iowa 725, 728, 729, 130 N. W. 798; Albrecht v. Albrecht, 121 Iowa 521, 96 N. W. 1087.

Davis v. John E. Brown College, 208 Iowa 480, 222 N. W. 858, and Boone Biblical College v. Forrest, 223 Iowa 1260, 275 N. W. 132, 116 A. L. R. 67, held there was a valid delivery where a deed was placed with a third party, in spite of an expressed reservation of the right to recall the instrument during the grantor's life, provided such reservation was never exercised. These decisions were contrary to the clear weight of authority and to the principles of some of our own cases, including Lathrop v. Knoop, 202 Iowa 621, 210 N. W. 764, and were overruled in Orris v. Whipple, 224 Iowa 1157, 1171, 280 N. W. 617, 624, 129 A. L. R. 1. The Orris case also overruled Robertson v. Renshaw, 220 Iowa 572, 261 N. W. 645, which was based largely on Davis v. John E. Brown College. The three overruled cases were said to "stand alone as supporting the rule therein announced."

The trial court's decision in plaintiff's favor here is based entirely on Orris v. Whipple, supra, upon which plaintiff mainly relies. We are unable to agree that the Orris case, with which we are in entire accord, is controlling here. It was a suit at law in replevin by the grantees of an unrecorded deed which had been executed and placed in the grantor's safe-deposit box, to which she alone had access. There was, to quote the opinion, "no semblance of a delivery either to the grantees or to a third person." See Lawson v. Boo, 227 Iowa 100, 103, 287 N. W. 282. No in-

structions were given to the banker or anyone else to deliver the deed. The only evidence in the Orris case having any tendency to show delivery was that the grantor told some others she wanted plaintiffs, or one of them, to have the property and had prepared papers so providing. This court properly held that plaintiffs, who had the burden, as the opinion points out, failed to prove delivery.

One important distinction between the case at bar and Orris v. Whipple is that here the deed was in the nature of a voluntary settlement among the principal natural objects of the grantor's bounty. In the cited case attention is called to the fact that the grantees were "not even collateral heirs" of the grantor.

█ The rule that a valid delivery may occur without actual transfer of possession of the deed is particularly true where, as here, the conveyance is one of voluntary settlement among the objects of the grantor's bounty. 26 C. J. S. 237, 239, section 42a; 18 C. J. 200, 201, section 96. In such a case, the mere fact that the grantor retains possession of the deed is not conclusive against its validity if there is no circumstance other than its retention to show the deed was not intended to be absolute. Annotation 129 A. L. R. 11, 40, and cases cited; 7 Thompson on Real Property, Perm. Ed., 638, 639, section 4170, and cases cited; Leighton v. Leighton, 196 Iowa 1191, 1201, 194 N. W. 276.

Where there is a good-faith voluntary conveyance to those who naturally have a claim upon the grantor's bounty, courts of equity are strongly inclined to uphold the deed and will do so unless impelled to the opposite conclusion by strong and convincing evidence. There is in such a case a high degree of mutual confidence between the parties. In this class of cases courts of equity do not put so much importance in the mere manual possession of the deed as in the intent of the grantor. If his intent to pass title presently to the grantee is satisfactorily shown, equity usually sustains such a conveyance, even where the grantor retained manual possession of the deed. White v. Willard, 232 Ill. 464, 83 N. E. 954, 956, and cases cited; Payne v. Henderson, 340 Ill. 160, 172 N. E. 173, 175; Garrett v. Andis, 159 Va. 150, 165 S. E. 657, and cases cited. See, also, Mason v. Mason, Mo., 231 S. W. 971; Schooler v. Schooler, 258 Mo. 83, 167 S. W. 444; Phillips v. Decker, 73 Ind. App. 376, 127 N. E. 570. We have recog-

nized and applied these principles in Leighton v. Leighton, 196 Iowa 1191, 1200, 1201, 194 N. W. 276, which quotes with approval from White v. Willard, supra. See, also, Newton v. Bealer, 41 Iowa 324. The decision in that case is approved in Orris v. Whipple, supra.

 Mary Kamberling executed this deed when she was in her last illness. By the deed and will she clearly made what she believed was a final and effective disposition of her property among the principal·claimants to her bounty. She handed the deed to Mrs. Orbison and instructed her to put it in a box in the closet, where it remained. It is a fair inference that the grantor, in her weakened condition, was physically unable to go to the box during the remainder of her life. The grantor, so far as shown by the evidence, never intended to exercise further control or dominion over the deed. She plainly told Mrs. Thompson where the deed was and would be at her death and asked her to mail it to Mrs. Stinson, giving the address, when the grantor died. Mrs. Thompson at least impliedly promised to do as requested and later made good her promise. The deed was found where the grantor had said it would be.

Miss Kamberling told her attorney that her will was not to include her Iowa property which had been deeded to those she wanted to have it. On the testimony of the attorney, see McKemey v. Ketchum, 188 Iowa 1081, 1082, 175 N. W. 325, and Payne v. Henderson, 340 Ill. 160, 172 N. E. 173. She later told defendants and others of the deed in a way that clearly shows she believed she had made an effective delivery and intended that what she did would so operate. Evidence of statements by the grantor that he had executed the deed has been "considered a potent factor, in connection with other circumstances, in determining whether or not there has been a delivery." Annotation 129 A. L. R. 11, 27, and cases·cited. It is true the belief of the grantor is not sufficient of itself to prove delivery. Heavner v. Kading, 209 Iowa 1271, 1274, 228 N. W. 311.

Let us suppose the grantor had handed the deed to Mrs. Thompson when instructing her as to its disposition, that Mrs. Thompson had agreed to do as directed and then herself placed the deed in this same box in the closet. In the light of the evidence in the case, there would then clearly have been a valid

constructive delivery of this deed, under our decisions. Even if the grantor had access to the box, this would not invalidate a previously completed delivery. Gruber v. Palmer, 230 Iowa 587, 590, 298 N. W. 926, 927; Huxley v. Liess, 226 Iowa 819, 823, 285 N. W. 216; Foreman v. Archer, 130 Iowa 49, 106 N. W. 372. See, too, Lawson v. Boo, 227 Iowa 100, 287 N. W. 282; Criswell v. Criswell, 138 Iowa 607, 116 N. W. 713. Since the controlling consideration is the intent of the grantor, we think the failure to hand the deed to Mrs. Thompson is not fatal to the claim of delivery. Unless we are to sacrifice substance for form, the legal effect of what was done is the substantial equivalent of the supposed case.

Plaintiff relies on one piece of testimony which it is claimed negatives delivery. The housekeeper testified:

"After she made a loan on her place of $2,000 she said she had every intention of changing her will or deed, I wouldn't say which, or if she made both, I don't know."

On this subject, however, Mrs. Smith, friend and typist, testified:

"* * * I was at Mary Kamberling's home every afternoon while the housekeeper was gone. During that time she talked to me about changing her will. She said that the way the will was worded Mrs. Thompson would be unable to give away any of the household furniture or any of her personal things * * * and that there were certain things in the house she wished to go to certain friends, and that was why she felt she should change the will so that Mrs. Thompson would have the privilege of giving those things away. She wanted to make lists of various things in the house to go to certain friends but she never got it done."

In view of Mrs. Smith's testimony about talk of changing the will, and under the entire record showing the grantor's complete satisfaction with the deed, we think the housekeeper's uncertain statement does not tend to show the deed was not delivered. We find nothing to indicate that the grantor did not intend the deed to be absolute except its retention in the box in the closet. Under the authorities heretofore cited, where the deed, as here, is

a voluntary settlement, this circumstance is insufficient to establish that the deed was not delivered.

From the standpoint of equity and justice there can be no doubt that defendants are entitled to prevail unless such a decision runs counter to some established rule of law. We think there is no legal principle or no decision of this court which requires an affirmance of the lower court. We hold there was a valid delivery of the deed.

In a case of this kind a plaintiff must recover on the strength of his own title. Section 12232, Code, 1939; Bohle v. Brooks, 225 Iowa 980, 986, 282 N. W. 351; Blain v. Blain, 215 Iowa 69, 72, 244 N. W. 827. Here it appears beyond question that the grantor intended not only that defendants should have this farm but also that plaintiff should not have it. It is undisputed that the will under which plaintiff claims was not intended to include the farm. Plaintiff is asking a court of equity to take the property from those whom the grantor intended to have it, holding as they do under a deed delivered in accordance with her expressed directions, and to vest title in one whom she intended not to have it. We hold the relief asked should be denied.—Reversed.

All JUSTICES concur.