IN RE ESTATE OF McKITTERICK.

(No. 168—Decided June 11, 1953.)

374

*Mr. Frank DeLay,* for exceptor-appellant.
*Messrs. Eubanks & Slavens,* for appellees.

COLLIER, J. This is an appeal from a judgment of the Probate Court of Jackson County overruling certain exceptions to the inventory and appraisement of the estate of Samuel G. McKitterick, deceased.

The first question which requires our attention is a matter of procedure. The administratrix, appellee herein, claims that the notice of appeal was not filed within the time limited by Section 12223-7, General Code. The judgment of the Probate Court overruling said exceptions was entered on April 17, 1952, and on the same day a motion for a new trial was filed, which motion was overruled on April 28, 1952. The notice of appeal was filed by the exceptor on May 9, 1952. The appellee contends that, since a motion for a new trial is not now necessary to perfect an appeal, the notice of appeal should have been filed within 20 days after the judgment entry of April 17, which time would have expired on May 7; and that the only question presented by the appeal, notice of which was filed May 9, is whether the trial court committed error in overruling the motion for a new trial.

This identical question was decided and the statutes involved were construed in the case of *Duemer* v. *Duemer,* 86 Ohio App., 192, 88 N. E. (2d), 603, 55 Ohio Law Abs., 33. On page 199, Ross, J., said:

"The motion [for new trial] was, therefore, properly and duly filed, and the motion to dismiss the appeal, because the notice of appeal, although filed within 20 days from the overruling of the motion for a new trial, was not filed within 20 days from the judgment of the court, is overruled."

Section 11575, General Code, as amended effective

October 11, 1945, provides for a new trial not only on issues of fact, but also on issues of law. Section 12223-7, General Code, amended at the same time, in express terms provides that the time for filing a notice of appeal does not commence to run until the motion for a new trial, if one is filed, is overruled. There is no merit in appellee's claim of irregularity in procedure. The notice of appeal in the present case was duly filed, and the appeal to this court was properly perfected under the present statutes.

Counsel agree that in disposing of this case it is necessary that we consider only one question, which is presented by the overruling of exception No. 2 to the inventory and appraisement. That question is whether Samuel G. McKitterick, the decedent, at the time of his death was the owner of the lands described in schedule E of the inventory and appraisement. The answer to this question depends upon whether there was a valid delivery of the deed of June 29, 1934, conveying the land, which is the subject matter of this action, from the decedent to his son, the exceptor. The proper execution of the deed by the decedent and his wife, Margaret McKitterick, parents of the exceptor, is admitted. If the deed was delivered from the father to the son, the land belongs to the exceptor in fee simple and is not an asset of the father's estate. On the other hand, if there was no valid delivery of the deed, as required by the formalities of the law in such a transaction, the mere execution of the deed by the parents would be ineffective to convey title to the son. Both proper execution and delivery of the deed are necessary to transfer title to real estate by deed. 13 Ohio Jurisprudence, 873, Section 58, reads:

"In a legal sense, the word 'execution' implies signing, sealing, and delivering."

The controlling factor in this case is whether there was a delivery of said deed, and the test of that ques-

tion is whether the decedent, the grantor, by his acts, words and conduct in his lifetime, as shown by the record, signified an intention to vest title to the lands in the grantee, the exceptor. It is said in 13 Ohio Jurisprudence, 876, Section 63:

"No particular form or ceremony is essential; delivery may now be made by words and acts, or either, if accompanied with the intention that they shall have that effect." See, also, 16 American Jurisprudence, 501, Deeds, Section 115 *et seq.*

Thus, it becomes necessary that we examine the facts and circumstances as disclosed by the record to determine whether such intention was manifested by the decedent. The facts are substantially as follows:

Samuel G. McKitterick, the decedent, on June 29, 1934, and for many years prior thereto was the owner of about 76 acres of farm land in the township of Lick, Jackson county, Ohio, where he and his family had long resided. The father and son, decedent and exceptor, cultivated the farm on equal shares and there was a close relationship between them which continued until the death of the father. On that date the decedent and his wife executed a deed, exceptor's exhibit A, conveying the farm to their only son, John McKitterick, the exceptor, but reserving a life estate to both the father and the mother. The deed was prepared and acknowledged in a lawyer's office and was taken by the decedent to his home and placed in a strong box with his other private papers, where it remained until after his death. A short time after the deed was executed, the decedent handed the deed to the son who examined it and handed it back to the father who then said: "I will take it back for safe keeping," and "this will make you a present one day." From that time until the date of his death, June 27, 1948, the decedent often referred to the deed in conversations with his son and other members of his fam-

ily and made such statements as, "this is your dad's when I am gone." Margaret McKitterick, wife of the decedent and mother of the exceptor, who was 95 years of age when she gave her testimony in this case and is now deceased, said, "the land belongs to Johnny when I am done with it." There was no testimony in the record of a contradictory nature, but it is contended that a different intention is shown by the further facts that the decedent continued in possession of both the land and the deed until the time of his death in 1948, that in 1941 the decedent conveyed an easement for highway purposes through the land, that in 1946 he executed two deeds for fractional acre tracts to his two granddaughters, daughters of the exceptor, and that in 1947 decedent executed a deed for a small tract to one Buel Harris; it being claimed that these acts indicated an intention by the decedent not to deliver the deed to the son but to retain title and revoke the deed which he had executed.

It should be remembered that the decedent retained a life estate in the deed for himself and his wife and both occupied the farm as a home as long as they lived. Is the retention of the deed and possession of the land by the decedent under these circumstances inconsistent with intention to make delivery, and are such acts strong enough to overcome the declarations of decedent as above quoted, the last of which statements were made about two weeks before his death?

It is stated in 26 Corpus Juris Secundum, 238:

"Grantor's retention of manual custody of the deed does not necessarily indicate nondelivery, if a contrary intent on his part is established."

In *McDevitt* v. *Morrow*, 57 Ohio Law Abs., 281, it was held:

"A deed is not rendered inoperative because the grantor retains possession of the property during his life, or because grantor had access to that deed."

And in the case of *Payne* v. *Henderson,* 340 Ill., 160, 172 N. E., 173, it is held that a grantor's retention of a deed reserving a life estate in and possession and control of property is not inconsistent with an intent to make delivery, and that such reservation raises a presumption that the deed is intended to operate immediately as a conveyance of a future estate vesting in possession at the termination of the life estate.

The *Payne case* is very similar in all respects to the present case, both in legal and factual questions. However, from a factual viewpoint on the question of delivery of the instrument by the grantor, the present case is much stronger. In the present case, there is evidence of actual delivery of the deed. When it was handed by the grantor to the grantee and when it was returned to him, he said, "I will take it back for safe keeping." No such evidence appears in the *Payne case.* The grantor, having reserved a life estate, had the right of dominion and control of the land and possession of the deed. The decedent lived 14 years after the execution of the deed, during which time he was in daily contact and working with the grantee, but there is no evidence in the record that decedent ever intended any other disposition of his property. Under these circumstances, our conclusion is that retention of the deed and control of the land by the father are not sufficient to show an intent different from that expressed by him.

We place little importance upon the subsequent conveyances which were made mostly with the knowledge, consent and approval of the grantee and without objection by him. Two of these conveyances by the grantor were made to the daughters of the exceptor and the tracts conveyed were very small in proportion to the entire acreage, a farm of 76 acres. In the *Payne case*, a similar situation was considered and it was held that a conveyance of land, including an eleven-

foot strip of a five-acre tract previously conveyed to another, did not show an intent to revoke a previous deed or negative an intent to make it effective when executed.

After a consideration of all the evidence, we are convinced that the decedent intended the deed of June 29, 1934, to his son to become effective at that time to convey a future estate after the termination of the life estates reserved in said deed, and intended the son to have the farm after the death of the parents.

The land described in schedule E of the inventory and appraisement is the property of the exceptor and no part of the assets of the estate, and should not have been included in the inventory and appraisement.

The judgment of the Probate Court, therefore, must be reversed. Since the other questions presented are determined by the decision on exception No. 2 to the inventory and appraisement, no further comment is necessary.

*Judgment reversed.*

GILLEN, P. J., and McCURDY, J., concur.